RECEIVED
MAR 04 2008

RECEIVED
MAR 4 2008
CLERK MICHAEL W. DOBBINS
U.S. DISTRICT COURT

RECEIVED

MAR – 4 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

United States District Court
Northern District of Illinois

Gerald Williams,
Plaintiff

vs.

State of Illinois,
Jesse White, Secretary of State,
Defendant

**08CV1298**
**JUDGE GUZMAN**
**MAG.JUDGE KEYS**

### COMPLAINT

1. This is a cause for deprivation of rights (42USC1983) and equal rights under the law (42USC1981).

2. The Secretary of State prosecuted Gerald Williams before affording him his right to a fair hearing before prosecution.

3. And the Secretary of State has honored no statute of limitation by enforcing in 2006 (17 years later) the revocation of the plaintiff's driver's license W452-2807-1126 that they failed to revoke in 1989.

4. This is a cause for false claims (31USC3802) and defamation of character (28USC-app.405).

5. The Secretary of State falsely accused Gerald Williams of using false information **concerning his name and / or date of birth** (only accusation) to obtain a second driver's license.

6. This complaint involves two driver's license in Gerald Williams' name.

7. The first driver's license W452-2807-1126 was issued August 5, 1987 to Gerald Williams at age 16.

8. This driver's license has been legally valid, continuous and uninterrupted from August 5, 1987 to November 1, 2006.

9. This driver's license has had no DUI's, no speeding and no moving violations from August 5, 1987 to November 1, 2006.

10. The second driver's license W452-2907-1064 was "created" and revoked in error, sometime in 1989, by the Secretary of State.

11. That driver's license has the incorrect date of birth MARCH 2, 1971 and has sat dormant and undetected in the Secretary of State's computer files for 17 years.

12. Pursuant to the ILCS; the Secretary of State created a fictitious driver's license (625 ILCS 5/6-301.1-a1) with false information (625 ILCS 5/6-301.1-a2) that should have been cancelled (625 ILCS 5/1-110) because of the Secretary of State's errors on that license.

13. In 2006, a third party discovered the Secretary of State's erroneously "created" and revoked driver's license.

14. The third party, the City of Chicago's Department of Aviation, informed Gerald Williams and the Secretary of State of their findings.

15. Due to heightened security efforts at airports because of the 911 attacks, a second background check by the FAA revealed the second driver's license W452-2907-1064 that was created and revoked erroneously by the Secretary of State in 1989.

16. The City of Chicago's Department of Aviation did not accuse Gerald Williams of any wrong-doing; they only made inquiry for the sake of national security concerning possible identity theft that could allow unauthorized access to the airfield.

17. Gerald Williams pleaded to his employer that he had NEVER knew of that second driver's license W452-2907-1064.

18. Gerald Williams was told that the only differences in the two driver's license is that the revoked one has a middle initial "J" and was revoked in1989 for possession of a stolen motor vehicle.

19. Gerald Williams admits that he was convicted in 1989 for possession of stolen motor vehicle but that he paid his debt to society for that youthful indiscretion and that his driver's license was never revoked for that offense.

20. Gerald Williams proved this to his employer by revealing his current valid driver's license.

21. Gerald Williams' driver's license revealed the number W452-2807-1126 and had no middle initial "J" in the name and a date of birth as May 2, 1971.

22. Gerald Williams assumed that it might be his father's driver's license.

23. Gerald Williams was advised to go the Secretary of State office to verify that he had the valid driver's license and to make sure that his identity had not been stolen.

24. Gerald Williams went to the Secretary of State to verify that he had the valid driver's license and to make sure his identity hadn't been stolen.

25. The Secretary of State said that both licenses were issued to Gerald Williams.

26. Without offering a hearing first, the Secretary of State falsely accused Gerald Williams of using false information to verify his identity to obtain what they ignorantly call the second driver's license W452-2807-1126 (this is the plaintiff's first driver's license)

27. The license that the Secretary of State calls the second license is actually the first license and vice versa.

28. The Secretary of State denied any responsibility for the two driver's license.

29. The Secretary of State combined their erroneous, blemished driver's license created and revoked in error in 1989 with Gerald Williams' valid, blemish FREE driver's license issued to him in 1987, and revoked both, in 2006, without a hearing.

30. Without a hearing the Secretary of State also prosecuted Gerald Williams with immediate revocation actions.

31. The Secretary of State said Gerald Williams was issued the "so called" first one W452-2907-1064 sometime in 1989.

32. The Secretary of State said Gerald Williams obtained the "so called" second one W452-2807-1126 on January 29, 2003, by using false identification to verify his date of birth.

33. Before offering Gerald Williams a hearing, the Secretary of State prosecuted Gerald Williams immediately with their 2006 revocation actions.

34. This immediately prevented Gerald Williams from working to support his family.

35. Gerald Williams has been a licensed driver since 1987, beginning his professional driving career in 1994 with Ameritech / AT&T and being halted, by the Secretary of State's illegal revocation actions, while employed as a driver for the City of Chicago, in 2006.

36. Gerald Williams requested a formal hearing to have this debacle resolved so that he could get back to work. Gerald Williams was granted a hearing for January 9, 2007.

37. By January 9, 2007 Gerald Williams had already missed two months of work because of the Secretary of State's rash revocation actions.

38. During the hearing the prosecutor for the Secretary of State omitted key facts, abused her authority and committed perjury to unfairly influence a revocation on Gerald Williams' driver's license.

39. Gerald Williams went to Springfield, Illinois to obtain the pertinent information that was withheld at the hearing, to prove that a sham has taken place.

## EXHIBITS SUPPORTING COMPLAINT

40. **In 1987**, the plaintiff was sixteen when the plaintiff was first issued his driver's license from the Secretary of State. The exact date was August 5, 1987; as shown on the timestamp on exhibit "C", his original driver's license application / file. The plaintiff brought his social security certificate and his birth certificate to the driving facility to verify his name and date of birth. The certificates showed his date of birth as May 2, 1971 and his name as Gerald James Williams, junior. The driving facility representative was the apparent authority to the plaintiff, so the plaintiff asked if it was ok for the plaintiff to use only Gerald Williams. That way his mail from the Secretary of State would not get mixed up with his father's mail from the Secretary of State. The plaintiff was told that it was in fact OK, so the plaintiff did. The handwritten signature of the facility rep verifies this authorization. The plaintiff was issued the "distinguishing" *(625 ILCS 5/6-110)* driver's license number W452-2807-1126 expiration date August 2, 1992. Because the plaintiff was sixteen, his expiration date was three months after his twenty first birth date **(626 ILCS 5/6-107)**. On every driver's license application there are two questions that asks, 1; is your driver's license revoked y or n? The plaintiff marked no. and then it asks do you presently hold a valid driver's license, y or n? The plaintiff marked yes. The plaintiff marked no because his driver's license W452-2807-1126 was not revoked and yes because the plaintiff, at each time, presently did hold a valid driver's license; his W452-2807-1126. (see EXHIBIT "C")

41. **In 1989**, the plaintiff was seventeen when and the plaintiff was charged and convicted of possession of a stolen motor vehicle. The plaintiff was sentenced to two years probation,

with no jail time. By **1991** the plaintiff served his time and paid his debt to society for that single youthful indiscretion. The plaintiff also bore the burden of carrying a felony on his record for the rest of his life. At the time of his arrest, the police were given true and correct information concerning his name and date of birth, as seen on exhibit "Q", the Chicago Police Department Identification Section and exhibit "P", the Illinois State Police Bureau of Identification. These exhibits show that the Chicago Police Department and the Illinois State Police were given his correct info at the time of his arrest. If the plaintiff would have given an alias or false date of birth, it would've showed on his arrest record and he would have received another charge for giving false information to the police, but that was not the case. The police were given true and correct information at the time of his arrest. (see EXHIBIT "Q" and EXHIBIT "P")

42. **From August 5, 1987-November 1, 2006** the plaintiff has held a very full, consistent and compliant driving life with no DUI's, no moving violations, and no speeding tickets on W452-2807-1126. The Secretary of State's granting of a driver's license to Gerald Williams after every application for a driver's license, has inferred to the plaintiff that he was in total compliance with the Secretary of State's requirements, rules and regulations for nearly twenty years. While licensed under W452-2807-1126;

(A) The plaintiff was issued his first license in 1987

(B) The plaintiff renewed his license in 1992 for his age 21 and over blue license.

(C) The plaintiff also renewed his license every 4 years after that.

(D) The plaintiff took a Secretary of State approved motor cycle riding course in 1996 and received an "M" class on his license in 1997.

(E) The plaintiff began his driving career in 1994 as a technician and driver for Ameritech/ Illinois Bell (AT&"T") for 8 years in compliance with the Secretary of State as required for employment with Ameritech/Illinois Bell (AT&"T").

(F) In 2002 the plaintiff invested $3000 in pursuing a new career to attend the Secretary of State approved Star Truck Driving School to learn to safely drive and operate commercial vehicles.

(G) In 2003 the plaintiff obtained his Commercial Driver's License from the Secretary of State.

> *(625 ILCS 5/6-501)Commercial drivers - permitted only one driver's license. No person who drives a commercial motor vehicle, on the highways, shall have more than one driver's license. Any person convicted of violating this Section shall be guilty of a Class "A" misdemeanor.*

>> 1. The Secretary of State did a very thorough CDL investigation and found the plaintiff to be compliant; therefore the plaintiff was issued a CDL.

>> 2. The plaintiff was not charged with violating this section, because the plaintiff never had more than one driver's license.

>> 3. The plaintiff was only able to receive a CDL because the Secretary of State found the plaintiff to be, as the plaintiff thought the plaintiff was, in complete compliance.

(H) The plaintiff also obtained All CDL truck driver's endorsements. That includes hazardous materials, tanker trucks, and multi combinational vehicles. With the exception of his "P" (passenger bus) endorsement, but the plaintiff did hold that permit.

(I) From there the plaintiff drove over the road for a few months for Werner Enterprises in 39 of the 48 continental United States with the Secretary of State's approval.

(J) The plaintiff also drove locally for Coca Cola for a few months with the Secretary of State's approval.

(K) Finally, the plaintiff landed a permanent career job with the City of Chicago in 2004 because the plaintiff was in total compliance with the Secretary of State and the plaintiff had a CDL with, no DUI's, no moving violations, and no speeding tickets on his driving history.

(L) From 1987- 2006 the plaintiff has made more than 20 applications to the Secretary of State for original, renewed, duplicate and corrected driver's licenses and has always been

issued a valid driver's license from the Secretary of State, which approved every and every application.

(M) And the plaintiff has marked no to question #1 on every application since 1987.

1. Question number one asks is your driver's license or ID card or privilege to obtain an ID card or license suspended, revoked, cancelled or refused in this state under this or any other name?

(a) The plaintiff has always marked no because his driver's license W452-2807-1126 has never been revoked. The plaintiff has held the same license from 1987-2006. The Secretary of State's erroneous failed revocation attempt in 1989 hindered the plaintiff from knowing of any revocation. The plaintiff never received any notice and the plaintiff has never been denied renewal of his driver's license.

2. And question two asks do you presently hold a valid driver's license or ID card in this or any other state?

(a) The plaintiff always marked yes to this, because the plaintiff was holding the same apparently legal and valid Illinois State issued driver's license since 1987.

1. The Secretary of State reviewed the application and found the plaintiff to be in compliance and issued the plaintiff a license granting the plaintiff renewed driving privileges on every occasion from August 5, 1987 to March 16, 2006, never being denied a driver's license. *Pursuant to (625 ILCS 5/6-110) Licenses issued to drivers. (a) The Secretary of State shall issue to every qualifying applicant a driver's license as applied for*

**43. In 2006** a third party, the plaintiff's employer the City of Chicago, <u>contacted the plaintiff and also contacted the Secretary of State</u> to inquire about the FAA's background check that discovered a revoked second driver's license in his name. That is what started this whole inquiry with the Secretary of State. (see EXHIBIT ""M""). In late October of 2006, the

plaintiff was detailed to "O'Hare international airport for the winter snow removal program. Due to the heightened security efforts since the 911 attacks, the federal government (Homeland Security) requires a second more thorough background check for any employee working on the airfield. The plaintiff's background check showed two driver's licenses in his name. One license has been revoked since 1989, that driver's license number was W452-2907-1064. The other was valid, and has been since being issued to the plaintiff in 1987. That driver's license number was W452-2807-1126. The plaintiff verified this with his employer by showing his employer his driver's license having the valid number. The plaintiff's employer told the plaintiff that the other one was revoked for possession of a stolen motor vehicle in 1989. The plaintiff told his employer that the plaintiff was convicted of possession of a stolen motor vehicle in 1989. And the plaintiff told his employer that the plaintiff received two years probation, but his driver's license were never revoked for that offense. According to, Dictionary.Law.com, a **license** is **1) n. governmental permission to perform a particular act (like getting married), conduct a particular business or occupation, operate machinery or vehicles _after proving ability to do so_ safely or use property for a certain purpose. 2) n. _the certificate that proves_ one has been granted authority to do something under governmental permission.** The plaintiff explained to his employer that the plaintiff held this license (certificate that proves or infers permission granted by the government) since 1987. We thought that the plaintiff's identity had been stolen. The plaintiff was advised by his employer to go to the Secretary of State and give them the information verifying his identity, and that the employer would get back on the phone and explain to them that the plaintiff _is carrying the valid driver's license._ That is what started this whole inquiry with the Secretary of State. (see EXHIBIT "M")

44. **November 6, 2006,** the plaintiff went to the Secretary of State to verify his own identification and to inquire about the second driver's license. The plaintiff was told that the only differences were the driver's license numbers and the fact that the revoked one had the middle initial "J". The plaintiff said it might be his father's driver's license. The plaintiff was asked his year of birth. The plaintiff said 1971. The plaintiff was told the revoked driver's license was 1971 also. The plaintiff was asked if the plaintiff had ever been convicted of possession of a stolen motor vehicle. The plaintiff said yes but his

driver's license W452-2807-1126 has never been revoked. The plaintiff was told that it should have been, but wasn't, and it wasn't cancelled either so a formal hearing would be in order to evaluate and correct the matter.

45. **Dated November 13, 2006**, the plaintiff received an accusatory letter from the Secretary of State. The Secretary of State falsely accused the plaintiff of using false information to obtain a second driver's license. As shown on exhibit "A", the Secretary of State said, "You were able to obtain this license ONLY because *the identification you provided* to verify your **name and /or date of birth** *was different than it appeared on your original file* (exhibit "C" is the original file)." It also stated that the Secretary of State has revoked the plaintiff's driver's license before offering the plaintiff a hearing to plead his case. (see EXHIBIT "A")

46. **November 21, 2006**, the plaintiff requested a formal hearing as shown on exhibit "R". The plaintiff checked two boxes. The first box the plaintiff checked was; to contest the revocation action of the Secretary of State. The plaintiff checked this box so that he could prove that the accusation of the plaintiff using false identification, **concerning his name and / or date of birth** to obtain a second driver's license was false. The plaintiff also checked the box; apply for full reinstatement or an RDP. The plaintiff checked this box to have his license (W452-2807-1126) that was revoked before a hearing, reinstated. (see EXHIBIT "R")

47. **Dated December 7, 2006**, the plaintiff received a Notice of Hearing from the Secretary of State. Exhibit "D" shows that the hearing would be held on January 9, 2007. The Notice of Hearing said nothing about affording the plaintiff the opportunity to contest the revocation action of the Secretary of State in accusing the plaintiff of using false information to obtain a second driver's license in 2006.It said the purpose of the hearing was to afford the plaintiff the opportunity to apply for driving privileges because of his 1989 conviction of any felony in the commission of which a motor vehicle was used. This conviction was seventeen years ago and the revocation for this offense in 2006 should be barred from enforcement. The plaintiff thought the Secretary of State had realized and corrected the issue concerning the second driver's license in his name. (see EXHIBIT "D")

48. **January 9, 2007**, during the hearing the Secretary of State's Hillary price-Cohen admits to having "all the driving histories." the plaintiff takes this to mean all of his driving histories or all of his driving records. (see EXHIBIT "N")

(A) The plaintiff immediately objected to the combining of both records before the hearing. (see EXHIBIT "H")

(B) Exhibits "O" and "T" both refer to W452-2807-1126. Exhibit "O" is the plaintiff's clean motor vehicle record from 1987 to 2006 prior to the Secretary of State's bogus revocation action in 2006. Exhibit "T "is the plaintiff's RUINED motor vehicle record after the Secretary of State's 2006 bogus revocation action. Compare EXHIBIT "O" and EXHIBIT "T ".

(C) Hillary price-Cohen said "for the record" as verified on exhibits B14 and B15,"we are here because this gentleman has two driver's license numbers. He has one number W452-2807-1126, with the date of birth of May 2, 1971. That was issued on January 29, 2003. Before that, he had a driver's license number of W452-2907-1064 and with a date of birth of March 2, 1971.  This is false. (see EXHIBITS B14 and B15)

(D) Hillary price-Cohen verified her accusation of the plaintiff's "criminal intent" to obtain a second driver's license as shown in exhibit "I". Hillary price-Cohen said that on January 29, 2003,"you (Gerald Williams) went into the Secretary of State's office and you gave them your name BUT you gave them the date of birth of May 2, 1971 and they issued a second driver's license to you." And this is false. (see EXHIBIT "I")

(E) The Secretary of State's own records show that this is false. Exhibit "K" is the January 29, 2003 application. It shows that the identification the plaintiff presented to **verify his name and / or date of birth** was his previous driver's license (D/L). (see EXHIBIT "K")

(F) Hillary price-Cohen also committed perjury on exhibit "L". She said, "…and WE noticed the same picture of the same person (Gerald Williams) with two (different) driver's license numbers and two (different) dates of birth." This is a blatant lie by the Secretary of State. (see EXHIBIT "L")

(G) The plaintiff reiterated in exhibits "F" and "G" that the plaintiff was under the impression that the plaintiff could reinstate his driver's license from when it was supposedly revoked in 1989 and contest the revocation for the fraud accusation in 2006, but combining the two is an error, because the plaintiff hasn't done anything fraudulent as accused by the Secretary of State. (EXHIBIT "F" and "G")

**49. In February of 2007** the plaintiff received a Notice of Revocation from the Secretary of State stating that his driver's license were revoked for making false statements on an application for a driver's license. It also stated that the plaintiff would be eligible for reinstatement January 9, 2008 (see EXHIBIT ""J"").

**50. February of 2007** the plaintiff also received the Order of Revocation. (see EXHIBIT "S - S5")

(A) The Order of revocation has a section called finding of facts, but these findings are full of fictitious, untrue, and defamatory statements (28USC-app.405).

1. The finding of facts 5a on exhibit S3, still in error, states that the plaintiff was first issued W452-2707-1064 and later issued a second driver's license W452-2807-1126 (see EXHIBIT S-3). This is all false according to his original application on file from the Secretary of State that shows that the plaintiff was issued his first driver's license W452-2807-1126, August 5, 1987. (EXHIBIT "C")

2. Finding of facts 5b, states, in error, that the petitioner's argument is "persuasive," particularly since it's the petitioner's first and not his second driver's license that bears the erroneous birth date. It also verifies, in the last sentence of 5b that the Secretary of State doesn't have a clue where the 1994 driving during suspension / revocation conviction arose from. (see EXIBIT S3).

PURSUANT to... *(625 ILCS 5/6-117)Records to be kept by the Secretary of State (b.) The Secretary of State shall maintain appropriate records of all licenses and permits refused, cancelled, disqualified, revoked, or suspended and of the revocation, suspension, and disqualification of*

*driving privileges of persons not licensed under this Chapter, and <u>such</u> <u>records</u> <u>shall</u> <u>note</u> <u>the</u> <u>reasons</u> <u>for</u> <u>such</u> <u>action.</u>*

*3.* Finding of facts 6 on exhibit S4, the Secretary of State states that "the petitioner's lack of knowledge regarding any incorrect information that THEY provide on their driver's license application does not preclude the Secretary of State from suspending their license due to making false statements or providing false information on a driver's license application. The irony in this statement is the fact that the Secretary of State's lack of knowledge regarding the incorrectness of the information that *they* provided during the revocation process, is what hindered the petitioner from knowing of the Secretary of State's intention of revoking the petitioner's driver's license in 1989, and it hindered the actual 1989 revocation itself.

(a) It hindered the petitioner's from receiving notice of the Secretary of State's failed revocation attempt in 1989.

(1) The Secretary of State sent notice of the revocation mailed to Gerald ""J"" Williams, which addresses mail from the Secretary of State to his absentee father. His father and his mother were separated then and are divorced now. In 1989, at age 17, the plaintiff had neither legal right nor parental authorization to open any mail from the Secretary of State that's addressed to his father.

(2) The middle initial ""J"" is how they differentiated his father's Secretary of State Mail from his Secretary of State Mail.

(3) In 1989, his father's mail from the Secretary of State was addressed to Gerald ""J"" Williams, 2705 w. 83rd st., Chgo., IL. 60652. that is who the 1989 Notice of revocation was forwarded to. His father and his mother were separated back then and she kept his father's mail in a box. His father would occasionally come to pick up his mail.

(4) In 1989, mail from the Secretary of State was addressed to the petitioner as Gerald Williams with no middle initial ""J"", but the same address.

(5) This is how they differentiated each other's mail from the Secretary of State.

(b) It also hindered the plaintiff's knowledge of his eligibility for reinstatement of his driving privileges in 1990.

(1) In 1990 the plaintiff was eligible for reinstatement and had absolutely no reason to avoid the Secretary of State for a hearing to have his license reinstated. The plaintiff was totally unaware of the Secretary of State's 1989 failed revocation actions against the plaintiff. But, the plaintiff was still in total compliance with the Secretary of State.

> *(g) of Section 6-118 at the end of any period of suspension of a license the licensee, if not ineligible for some other reason, shall be entitled to reinstatement of driving privileges and the return of his license if it has not then expired; or, in case it has expired, to apply for a new license.*

(c) Finally, it hindered the Secretary of State from properly revoking the petitioner's driver's license in 1989. The petitioner's driver's license (W452-2807-1126) remained unaffected, valid, and legitimate from 1987-2006 and driver's license (W452-2907-1064) was revoked in error in 1989.

(d) The Secretary of State argued Bruce vs. White, 279 Ill. Dec. 907, 801 "N"."E".2d 581 (ILL. App. 4th Dist. 2003). This should not have been allowed because the Williams vs. White case is unprecedented. Because the Secretary of State has never issued an individual a second driver's

license number without notifying that individual of the second license number and not canceling his previous driver's license. Furthermore, the Secretary of State has never blamed an individual for their own negligence, after knowing that their own negligence is what hindered that notification.

(e) There are several differences in Bruce vs. White and **Williams vs. White**;

>   (1) In Bruce, Bruce changed her name and address, but **Williams did not**;
>
>    (2) Bruce didn't deny that the suspension was entered, but **Williams stated never knowing of neither the 1989 revocation nor W452-2907-1064**;
>
>   (3) Bruce didn't hold a valid driver's license for six years, but **Williams held a valid driver's license W452-2807-1126 for 19 years, continuously since 1987**;
>
>    (4) Bruce's demeanor was indignant and her testimony was not credible, but **Williams' demeanor was polite and sincere and his testimony was credible**;
>
>   (5) Secretary of State maintained accurate records for Bruce, but **Williams' records are incorrect, incomplete, inaccurate and inappropriate for a fair hearing**;
>
>   (6) Bruce was stopped by the police, but **Williams went to the Secretary of State in an attempt to have an error corrected.**

4. Finding of facts 7, shows that despite all of the Secretary of State's own records proving the validity of the plaintiff's testimony, and the negligence on their part, it also states that the plaintiff has not provided sufficient evidence to rescind this order of revocation. The Secretary of State has provided no evidence, only hearsay.

5. Finding of Facts 8a, the Secretary of State denied the petitioner a restricted driving permit to go to and from work, maintaining that there are no provisions for the issuance of restricted driving permits for CDL licensees.

> (a) The plaintiff was in between a rock and a hard place. The plaintiff could not drive trucks for the city of Chicago, because his CDL's was erroneously revoked in 2006. And the plaintiff was not granted a restricted driving permit (RDP), to work in his second profession as a home improvement contractor, because the plaintiff was a CDL licensee not permitted to have a RDP.

6. Finding of facts 9 and 10, acknowledges that the plaintiff was polite and that his testimony was sincere.

7. Finding of facts 11, acknowledges that this revocation action will cause an undue hardship for the plaintiff and his family.

8. In the Recommendation section of the Order on exhibit "S5", the hearing officer shows that human error from officials is possible. She entered the effective date as January 9, 2006 instead of 2007. And on exhibit "S3" section 5a she did the other typo W452-2707 instead of W452-2907-1064. The Illinois State Police made another typo on exhibit "P" by putting the name GERARD, instead of GERALD.

## COMPLAINT POINTS SUPPORTED BY ILCS

51. **Point**, the plaintiff has been granted the privilege from the Secretary of State to drive legally from August 5, 1987 to November 1, 2006.The plaintiff has NEVER been denied a driver's license. The plaintiff has always followed the proper procedures for applying for driver's license. The plaintiff goes to the Secretary of State office, provides the required identification and completes the driving application then signs it to affirm that the information provided is true and correct. The Secretary of State then examines the application, ascertains that the plaintiff is a qualified applicant, approves it and issues the plaintiff a driver's license.  The plaintiff was legally issued and has continuously held a

valid driver's license from 1987 to 2006, never being denied the renewal of his driver's license. Never! In 1987, the Secretary of State issued the plaintiff the plaintiff's very first driver's license (**W452-2807-1126**). *PURSUANT to (625 ILCS 5/6-110) Licenses issued to drivers. (a) The Secretary of State shall issue to every qualifying applicant a driver's license as applied for, which license shall bear a distinguishing number assigned to the licensee* From 1987-2006 the Secretary of State has viewed the plaintiff as a qualified applicant, because they issued the plaintiff the plaintiff's first driver's license in 1987 and has never denied issuing the plaintiff a driver's license between 1987 and 2006.

Issued: **August 5, 1987** / not revoked in 1989

Driver's license# **W452-2807-1126** (valid with no violations or DUI's)

**Gerald Williams**

**May 2, 1971**

**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**


According to, Dictionary.Law.com, a **license** is *1) n. governmental permission to perform a particular act (like getting married), conduct a particular business or occupation, operate machinery or vehicles after proving ability to do so safely or use property for a certain purpose. 2) n. the certificate that proves one has been granted authority to do something under governmental permission.* In accordance with, *(625 ILCS 5/6-112) License and Permits to be carried and exhibited on demand. No person charged with violating this Section shall be convicted if he produces in court satisfactory evidence that a driver's license was therefore issued to the plaintiff and was valid at the time of the plaintiff's arrest. For the purposes of this Section, "display" means the manual surrender of the plaintiff's license certificate into the hands of the demanding officer for his inspection thereof.* The plaintiff has been able to physically "display" the plaintiff's license (certificate that proves governmental permission) to anyone at any time from 1987 to 2006. And pursuant to *(625 ILCS 5/6-704) Applications for New Licenses. Upon application for a license to drive, the licensing authority in a party state shall ascertain whether the applicant has ever held, or is the holder of a license to drive...* The plaintiff has been driving in compliance from 1987 to 2006 with no DUI's, no moving violations and no speeding tickets. If the

plaintiff's driver's license W452-2807-1126 was revoked since 1989, the plaintiff would not have been able to renew the plaintiff's license every four years for the last twenty years as the plaintiff did. The plaintiff would not have been able to drive professionally since 1994 as he did. And the plaintiff would not have been able to obtain a CDL in 2003 with the Secretary of State's permission as the plaintiff did. *(625 ILCS 5/6-501)* *Commercial drivers - permitted only one driver's license. No person who drives a commercial motor vehicle, on the highways, shall have more than one driver's license. Any person convicted of violating this Section shall be guilty of a Class A misdemeanor.* After thorough investigations, the Secretary of State has granted permission for issuance of the plaintiff's driver's license for the last twenty years never denying the plaintiff, and their negligence in the revocation process has hindered the plaintiff's knowledge of the failed 1989 revocation attempt. Therefore, the plaintiff has always marked <u>no</u> on every driver's license application from 1987 to 2006.

52. **Point,** the plaintiff was charged and convicted of a felony in 1989. The Secretary of State was supposed to revoke the plaintiff's driver's license in 1989 for that felony conviction. The Secretary of State failed in their duty to revoke the plaintiff's driver's license in 1989 and therefore should be barred from enforcing the 1989 failed revocation in 2006. Pursuant to

*(625 ILCS 5/6-205) Mandatory revocation of license or permit; Hardship cases.*

*3. Any felony under the laws of any State or the*
*federal government in the commission of which a motor vehicle was used*

In 1989 the plaintiff was 17 years old, convicted of a felony possession of a stolen motor vehicle and sentenced to two years probation. The plaintiff served the plaintiff's time and paid the plaintiff's debt to society for that youthful indiscretion. **The plaintiff had valid driver's license in 1989** available for revocation. During the 1989 revocation process The Secretary of State used the incorrect date of birth March 2, 1971, instead of the plaintiff's correct date of birth May 2, 1971, and thus created a fictitious driver's license with false information, in error. The Secretary of State was supposed to revoke the plaintiff's driver's license W452-2807-1126 but they never did. Instead, in error, the Secretary of State created a fictitious driver's license *(625 ILCS 5/6-301.1-a 1)* w/false information *(625 ILCS 5/6-301.1-a 2,* and revoked it.

By inputting the wrong date of birth as March 2, 1971, The Secretary of State created then revoked that fictitious driver's license with the false information, W452-2907-1064 in 1989, instead of revoking the plaintiff's driver's license W452-2807-1126.

> *Pursuant to (625 ILCS 5/6-301.1) Fictitious or unlawfully altered driver's license or permit. (a) As used in this Section:*
>
> *1. "A fictitious driver's license or permit" means*
> *any issued license or permit for which a computerized number and file have been created by the Secretary of State or other official driver's license agency in another jurisdiction which contains false information concerning the identity of the individual issued the license or permit;*
>
> *2. "False information" means any information*
> *concerning the legal name, sex, date of birth, social security number or any photograph that falsifies all or in part the actual identity of the individual issued the license or permit;*

The Secretary of State created a fictitious driver's license with false information, created as;

Issued: **never / no application / revoked in 1989**

Driver's license# **W452-2907-1064** (no driving history)

**Gerald J. Williams** (Secretary of State added middle initial)

**March 2, 1971** (Secretary of State added this birth date)

**No social** (Secretary of State omitted social security #)

> Pursuant to *(625 ILCS 5/6-209) Notice of Cancellation, Suspension or Revocation – Surrender and Return of License. The Secretary of State upon canceling, suspending or revoking a license or permit shall immediately notify the holder thereof in writing and shall require that such license or permit shall be surrendered to and retained by the Secretary of State. However, upon payment of the reinstatement fee set out in subsection (g) of Section 6-118 at the end of any period of suspension of a license the licensee, if not ineligible for*

> *some other reason, shall be entitled to reinstatement of driving privileges and*
> *the return of the plaintiff's license if it has not then expired; or, in case it has*
> *expired, to apply for a new license.*

The plaintiff never received the 1989 Notice of Revocation. In 1989 the Secretary of State sent notice addressed to the plaintiff's father, who no longer lived at that address. At 17, the plaintiff had neither legal right nor parental authorization to open any mail from the Secretary of State addressed to the plaintiff's father. The plaintiff first saw that notice during the January 9, 2006 hearing. That notice stated that driver's license W452-2907-1064 was being revoked and needed to be surrendered to the Secretary of State, but how can anyone surrender something that they don't possess? The plaintiff admits that if he had seen it, which he didn't, in 1989, he would have thought it was the plaintiff's father's, because the plaintiffs "distinguishing" driver's license from the Secretary of State is W452-2807-1126 and is NOT W452-2907-1064 and no date of birth is on the 1989 notice of revocation. If the plaintiff had been properly notified of the 1989 revocation, the plaintiff would have been able to have the plaintiff's license reinstated in 1990, because the plaintiff was eligible for reinstatement. The Secretary of State revoked W452-2907-1064 the Secretary of State DID NOT revoke the plaintiff's drivers license W452-2807-1126, in 1989. This single act of negligence gained momentum in its 17 year stagnant state of being in limbo. It created an avalanche of confusion, undue hardship and loss for the plaintiff and the plaintiff's family, 17 years later.

53. **Point**, this is not the first act of negligence by the Secretary of State concerning incorrect information on the plaintiff's driver's license. The Secretary of State's negligence has twice (in 1987 and 1989) made official errors concerning the plaintiff's date of birth resulting in the creation of two fictitious driver's licenses in the plaintiff's name. The very first time was during the application process in 1987. The Secretary of State used the erroneous date of birth April 2, 1971 creating the fictitious driver's license, with false information, number W452-2807-1095. When the Secretary of State realized their mistake in creating that fictitious driver's license in 1987, under the Jim Edgar administration, they were in accord with *(625 ILCS 5/1-110) Cancellation of driver's license. The annulment or termination by formal action of the Secretary of a person's*

**driver's license _because of some error or defect in the license._** The Secretary of State
cancelled that erroneous driver's license in 1987 and issued the plaintiff a fresh new
driver's license, number W452-2807-1126. The second time was during the revocation
process in 1989, the Secretary of State used the erroneous date of birth March 2, 1971
creating the fictitious driver's license, with false information, number W452-2907-1064.
The Secretary of State then revoked that fictitious driver's license in 1989. That revoked
license sat dormant and undetected in the Secretary of State's computer files for 17 years
before being discovered in 2006 by a third party, the plaintiff's employer, not by the
plaintiff and not by the Secretary of State. That fictitious driver's license number with the
false information is W452-2907-1064. According to the law, this fictitious driver's
license should have been cancelled upon its discovery in 2006.

54. **Point,** The Secretary of State never notified the plaintiff and the plaintiff didn't find out until
2006, due to a third party investigation, that the plaintiff's driver's license W452-2807-
1126 was supposed to have been revoked in 1989. **In 2006** a third party, the plaintiff's
employer the City of Chicago, <u>contacted the plaintiff and the Secretary of State</u> to inquire
about the FAA's background check that discovered a revoked second driver's license in
the plaintiff's name. The findings showed a valid driver's licenseW452-2807-1126. This
is the driver's license that the plaintiff has carried since 1987.The findings also showed a
second "erroneous" license revoked since 1989, driver's licenseW452-2907-1064. After
verifying the plaintiff's identification card and the plaintiff's driver's license with the
plaintiff's employer, the plaintiff was advised to go to the Secretary of State to verify the
plaintiff's identity, allowing the Secretary of State to correct their records, and make sure
the plaintiff's identity has not been stolen. The plaintiff was told the plaintiff needed to
get the situation corrected before the plaintiff could gain clearance to go back to work.
The Secretary of State immediately pointed the finger at the plaintiff saying the plaintiff
was revoked in 1989 and waited 17 years to get a second driver' s license, because the
plaintiff had the 1989 revocation. This is absurd especially since, although the plaintiff
was unaware for the last 17 years, the plaintiff has been eligible for reinstatement for the
last 16 years (since 1990). But the Secretary of State's negligence hindered the
knowledge of eligibility in 1990 also. The plaintiff had no reason to fraudulently obtain a
second driver's license by using false information after 17 years. Pursuant to **_(625 ILCS_**

*5/1-110) Cancellation of driver's license.* **The annulment or termination by formal action of the Secretary of a person's driver's license** *because* **of** *some* **error** *or defect in the license* The Secretary of State should have cancelled the erroneous driver's license.

55. **Point,** the plaintiff feels that the Secretary of State has denied the plaintiff due process of law.

The Secretary of State took revocation actions against the plaintiff, without sufficient evidence, by not allowing the plaintiff a preliminary hearing prior to their bogus revocation actions. ***Sec. 6-206. Discretionary authority to suspend or revoke license or permit; Right to a hearing. (a) The Secretary of State is authorized to suspend or revoke the driving privileges of any person without preliminary hearing upon a showing of the person's records or other*** *sufficient* ***evidence*** *that the person:5. Has permitted an unlawful or fraudulent use of a driver's license, identification card, or permit;*

The Secretary of State has neither records nor evidence of any unlawful or fraudulent use of the plaintiff's driver's license, but they still revoked the plaintiff's license before allowing a hearing. The Secretary of State also combined the plaintiff's valid driver's license and their erroneous fictitious driver's license before even investigating the inquiry or before having a fair hearing to see what happened. A proper investigation would have found out why the plaintiff appeared to have 2 driver's licenses when the plaintiff insisted, and in fact, only had one. The second driver's license was created in error by the Secretary of State. The Secretary of State combined and revoked both the plaintiff's valid driver's license and their erroneous fictitious driver's license, before they allowed the plaintiff the opportunity to have a hearing to clear up the confusion that they caused concerning the two driver's licenses in the plaintiff's name.   This careless negligence prevented the plaintiff from being able to work to provide for the plaintiff's family. Starting in 1994 and all the way in to 2006, the plaintiff was a professional driver prior to this 2006 bogus revocation of the plaintiff's driver's license by the Secretary of State. We made inquiry to the Secretary of State about the two driver's licenses in the plaintiff's name. In response, **in a letter to the plaintiff dated November 13, 2006** the Secretary of State accused the plaintiff of **using false identification to verify the plaintiff's name**

**and / or date of birth to obtain a second driver's license** (see EXHIBIT "A"). The Secretary of State's letter did NOT accuse the plaintiff of marking "no" to question number 1 on the plaintiff's driver's license application. The Secretary of State also stated that, that was the ONLY reason the plaintiff was able to obtain that "so called" second license.

56. **Point,** The Secretary of State combined and revoked both the plaintiff's valid driver's license and their erroneous fictitious driver's license before allowing the plaintiff a hearing. This is not only a denial of due process, but also a defamation of the plaintiff's character because; the resulting driving record now has two revocations on the plaintiff's driver's license **W452-2807-1126.** The plaintiff driving record now states that the plaintiff was revoked in 2006 for falsifying information. It also states that the plaintiff was revoked on the plaintiff's driver's license W452-2807-1126 in 1989 for auto theft. The plaintiff feels that this action against driver's license W452-2807-1126 should be barred from enforcement, because the Secretary of State failed to revoke W452-2807-1126 seventeen years ago, in 1989. The plaintiff's driver's license W452-2807-1126 was not revoked in 1989 for auto theft. A fictitious driver's license with false information created in error by the Secretary of State was revoked in 1989 for auto theft. it has defamed the plaintiff's character by totally ruining the plaintiff's driving record with trumped up false charges and an "unfavorable to employers" driving record due to the Secretary of State's mistakes. The first revocation on the combined record is the one they failed to properly revoke in 1989 for the possession of stolen motor vehicle 17 years ago. The second revocation on the combined record is from the 2006 false accusation of the plaintiff **using false information concerning the plaintiff's name and / or date of birth** to obtain a second driver's license. This makes the plaintiff look like a thief and a liar in front of the hearing officer (or judge) and on the public records of the hearing. And it reduces, if not totally eliminates, the plaintiff's chances at future driving employment. It also prevents the plaintiff from being able to provide support for the plaintiff's four children now aged 2, 9, 10, and 11.

57. **Point,** The Secretary of State is the apparent authority. The authority has authorized governmental permission for the issuance of the plaintiff's driver's license W452-2807-

1126 on every application from 1987 to 2006. By the time of the January 9, 2007 hearing, the Secretary of State knew or should have known that the plaintiff was originally issued the plaintiff's first driver's license W452-2807-1126 in 1987.They knew or should have known that they created and revoked a fictitious driver's license W452-2907-1064 in error in 1989. They knew or should have known that the plaintiff has been driving in compliance under the plaintiff's driver's license W452-2807-1126 from 1987 to 2006 with no DUI's, no speeding tickets and no moving violations. And Hillary price-Cohen knew or should have known that the plaintiff was never <u>issued</u> the fictitious driver's license W452-2907-1064.

A. Secretary of State's Hillary price-Cohen omitted key facts.

*Pursuant to... **(625 ILCS 5/6-117) Records to be kept by the Secretary of State***

***(a.)The Secretary of State shall file every application for a license or permit accepted under this Chapter, and shall maintain suitable indexes thereof. The records of the Secretary of State shall indicate the action taken with respect to such applications.***

***(f.)The Secretary of State shall also maintain or contract to maintain appropriate records of all photographs and signatures obtained in the process of issuing any driver's license, permit, or identification card. The record shall be confidential and shall not be disclosed except to those entities listed under Section 6-110.1 of this Code.***

During the hearing, Hillary price-Cohen had access to all of the plaintiff's driving records. During the hearing she omitted the plaintiff's original 1987 application that would prove that the plaintiff was issued the plaintiff's driver's license W452-2807-1126 before the fictitious driver's license W452-2907-1064 was created in error by the Secretary of State in 1989. Hillary price-Cohen insisted on arguing that her investigation showed that the plaintiff was issued W452-2807-1126 on January 29, 2003 after the fictitious driver's license W452-2907-1064 was created in error in 1989.

B. Secretary of State's Hillary price-Cohen abused authority.

During the hearing, the plaintiff entered into evidence the plaintiff's birth certificate, disproving the Secretary of State's false accusation of the plaintiff **using false information concerning the plaintiff's name and / or date of birth** to obtain a second driver's license. So, abusing authority, the Secretary of State's Hillary price-Cohen changed the accusation during the hearing. Now, the plaintiff wasn't being accused of **using false information concerning the plaintiff's name and / or date of birth** to obtain a second driver's license, because the plaintiff proved that the information provided concerning the plaintiff's name and / or date of birth was true and correct. Hillary price-Cohen then accused the plaintiff of doing something that the plaintiff has been doing every time since 1987 and that's marking <u>no</u> to question number 1 on the plaintiff's driver's license application that asks; is your driver's license currently revoked? The plaintiff marked no on more than twenty applications from 1987-2006, because apparently, to the plaintiff and the Secretary of State, the plaintiff's license W452-2807-1126 was not revoked. The plaintiff has held it in compliance since 1987 and the plaintiff was never denied it.  Pursuant to ***<u>(625 ILCS 5/6-110) Licenses issued to drivers.</u> (a) The Secretary of State shall issue <u>to</u> <u>every</u> <u>qualifying</u> <u>applicant</u> a driver's license as applied for, which license shall bear a <u>distinguishing</u> <u>number</u> assigned to the licensee***

C. Secretary of State's Hillary price-Cohen committed perjury.

The Secretary of State's Hillary price-Cohen committed perjury and said, "…we (self including herself) noticed the same picture of the same person (the plaintiff) with two (different) driver's license numbers and two (different) dates of birth." This is false.

***<u>(625 ILCS 5/6-302)</u>  <u>Making false application or affidavit - Perjury.</u>  It is a violation of this Section for any person:***

***2. To accept or allow to be accepted any document displayed or presented for the purpose of making***

*application for a driver's license permit __knowing__ __that__ __such__*
*__document__ __contains false__ __information__ __concerning__ __the__*
*__identity__ __of__ __the__ __applicant__;*
*3. To knowingly make any false affidavit or swear*
*or affirm falsely to any matter or thing required by the*
*terms of this Act to be sworn to or affirmed.*

D. Abuse of discretion

In 2006, the plaintiff proved that the valid driver's license W452-2807-1126 was
the plaintiff's and that the information on the plaintiff's driver's license matched
the information on the plaintiff's identification card, the plaintiff's birth certificate
and the plaintiff's social security certificate verifying that the plaintiff's date of
birth is May 2, 1971. Also proving, that W452-2907-1064 was a fictitious driver's
license with false information. In violation of (__*625 ILCS 5/1-110) Cancellation of*__
__*driver's license.*__ The Secretary of State under the Jesse White administration
failed to cancel the erroneous fictitious driver's license with the false information
even after confirming the errors in that driver's license.

**58. Point**, the hearing officer relied only on untrue hearsay evidence provided by Hillary price-
Cohen in upholding the revocation of the plaintiff's driver's license. All of the plaintiff's
evidence is supported by Secretary of State Documents, Illinois Compiled Statutes,
Illinois Vehicle Code and transcripts from the January 9, 2007 hearing. The hearing
officer and Hillary price-Cohen appeared to the plaintiff to be cronies. This is a clear
abuse of discretion. In point 7 of this complaint, the Secretary of State's Hillary price-
Cohen claimed seeing two driver's licenses with the plaintiff's picture on both drivers'
licenses, but with different driver's license numbers and different dates of birth. This is
hearsay because one of those two driver's licenses doesn't exist. The hearing officer's
decision was influenced by false hearsay evidence.

**DAMAGES= at least $210,000**

1. The plaintiff feels that the Secretary of State owes the plaintiff for damages including the plaintiff's time off for work equaling near $5,000 a month for lost wages. (16 months off work as of March 2008)

2. The plaintiff feels that the Secretary of State owes the plaintiff $150,000 for the plaintiff's pain and suffering.

3. The plaintiff feels that the Secretary of State owes the plaintiff the plaintiff's driving record restored to its original pre-revocation state. (Or in the alternative, $35,000 for defamation of character on that motor vehicle driving record, for employment reasons.)

4. The plaintiff feels that this 2006 revocation action for the 1989 felony conviction against driver's license W452-2807-1126 should be barred from enforcement, because the Secretary of State failed to revoke W452-2807-1126 seventeen years ago, in 1989. The Secretary of State has completely ignored all statutes of limitations for this action.

5. The plaintiff feels that the Secretary of State owes the plaintiff complete restoration of the plaintiff's CDL. (Or in the alternative, $15,000 for tuition for additional training and time off work for that retraining.)

6. The plaintiff feels that the Secretary of State owes the plaintiff a new driver's license number.

7. The plaintiff feels that the Secretary of State owes the plaintiff an explanatory letter to the plaintiff's employer.

8. The plaintiff feels that the head of the Secretary of State's Department of Administrative Hearings (not Jesse White) and every hearing officer and office manager and state employee involved in this debacle, owes the plaintiff formal written apologies.

3-4-08

Gerald Williams

2705 w 83rd st

Chgo., IL. 60652      773-776-5563

EXHIBITS
WILLIAMS vs. WHITE

EXHIBIT "A"            ORIGINAL ACCUSATION- Showing that petitioner's
                      license were revoked before January 9 2007 hearing.

EXHIBIT "B14-B15"     January 9 2007, HEARING TRANSCRIPT- SOS explains
                      for the record why we were having a hearing.

EXHIBIT "C"           PETITIONER'S ORIGINAL APPLICATION FOR
                      DRIVER'S LICENSE- August 5 1987

EXHIBIT "D"           NOTICE OF HEARING- shows purpose of hearing.

EXHIBIT "F"           January 9 2007 HEARING TRANSCRIPT
EXHIBIT "G"           January 9 2007 HEARING TRANSCRIPT
EXHIBIT "H"           January 9 2007 HEARING TRANSCRIPT

EXHIBIT "I"           SOS'S FALSE ACCUSATION REINTERATED.

EXHIBIT "J"           NOTICE OF REVOCATION

EXHIBIT "K"           January 29 2003 APPLICATION-shows that petitioner
                      used his previous driver's license to renew and upgrade his
                      existing driver's license.

EXHIBIT "L"           SOS ATTORNEY COMMITS PERJURY to unfairly
                      influence the course of events resulting in upholding
                      revocation.

EXHIBIT "M"           January 9 2007, HEARING TRANSCRIPT- SOS explains
                      for the record why we were having a hearing.

EXHIBIT "N"           January 9 2007 HEARING TRANSCRIPT- SOS admits to
                      having all of the petitioner's driving history.

EXHIBIT "O"           PETITIONER'S DRIVING RECORD PRIOR to the SOS
                      BOGUS 2006 Revocation.

EXHIBIT "P"           ILLINOIS STATE POLICE ID DEPARTMENT
EXHIBIT "Q"           CHICAGO POLICE ID SECTION

EXHIBIT "R"           FORMAL HEARING REQUEST

EXHIBIT "S-S5"        ORDER OF REVOCATION five (5) pages

EXHIBIT "T"           PETITIONER'S DRIVING RECORD AFTER the SOS
                      BOGUS 2006 Revocation.





**EXHIBIT "A"**



# OFFICE OF THE SECRETARY OF STATE

### JESSE WHITE • Secretary of State

November 13, 2006

GERALD WILLIAMS
2705 W 83RD STREET
CHICAGO IL 60652

*[handwritten annotation, with bracket] Gerald Williams and his employer contacted the S.o.S. to make sure Williams' identity had not been stolen. Gerald Williams has been driving on a valid W452-2807-1126 since August 5, 1987 authorized by the S.o.S. for 20 years (no violations and no DUI's.)*

**625 ILCS 5/6-301.1(a) 1:** "Fictitious driver's license."

*Created in error by the S.o.S.*

Re.    W452-2807-1126

*[handwritten left margin] SOS revoked Gerald Williams license before a hearing*

Dear Mr. Williams:

███████████ and determined that file numbers W452-2907-1064 and W452-2807-1126 belong to you. Based on this information, we have combined all information contained in the above-mentioned files into one file. Your combined file now shows the following information:

NAME:                    Gerald Williams
DATE OF BIRTH:           May 2, 1971
DRIVERS LICENSE NUMBER:  W452-2807-1126
CURRENT STATUS:          Revoked

*[handwritten] SAME AS ON ORIGINAL FILE*

Our records indicate you are ineligible for a drivers license because your privileges to obtain a drivers license were revoked when you last made application for a drivers license. You were able to obtain this license only because the identification you provided to verify your name and/or date of birth was different than it appeared on your original file.

*[handwritten left margin] The S.o.S. says that the license was obtained only because the information provided was different than it appeared on the original file.*

*[handwritten right margin] FALSE. Gerald Williams provided a previous driver's license and it is the same as his original file August 5, 1987.*

An Order is being entered to revoke your drivers license and driving privileges. The Notice of Revocation is being mailed under separate cover and will be updated in approximately 60 days to afford you an opportunity to seek a hearing regarding this action.

In addition, the drivers license you obtained on March 16, 2006 is being canceled under Section 6-201(a)5. The Order of Cancellation is also being sent under separate cover.

To request a formal hearing to contest the above revocation, please complete the enclosed form and return it to the Department of Administrative Hearings at one of the addresses listed.

If your occupation or livelihood requires you to drive, you may contact a hearing officer at the nearest Driver Services Facility and make application for a restricted driving permit.





2701 South Dirksen Parkway
Springfield, Illinois 62723



EXHIBIT "B 14"

```
1          THE WITNESS:  Yes, I would like to
2     take --
3          HEARING OFFICER:  Take a quick look at
4     them.
5          MS. PRICE-COHEN:  Maybe it would be
6     easier if I gave a history -- do you want me to
7     give him the whole thing?
8          HEARING OFFICER:  Yeah, give him what you
9     have got.
10          MS. PRICE-COHEN:  Maybe it would be
11     easier if I gave him --. for the record, while you
12     are doing this, let me tell you the history of why
13     you are here.
14          HEARING OFFICER:  Well, let's get his --
15          MS. PRICE-COHEN:  Put away all your
16     stuff, please.
17          HEARING OFFICER:  Yeah, let's not get
18     paperwork confused here.  We can be here all day
19     and half the night doing that.
20          MS. PRICE-COHEN:  At least let me make a
21     record, we are here because this gentleman has two
22     driver's license numbers.  He has one number
23     W-452-2807-1126, with the date of birth of May 2nd
24     of 1971.  That was issued on January 29th, 2003.
```

False, this is the petitioners first DL issued August 5, 1987. Two years before the felony conviction in 1989.

14

EXHIBIT "B₁₄"



EXHIBIT "B15"

9    625 ILCS 5/6-
301.1a.2. False
Information.
False, the S.o.S's
own records show
that this fictitious
DL with false
information was
created after the
petitioner's original
DL issued August 5,
1987.

Before that, he had a driver's license number of

W-452-2907-1064 and with a date of birth of March

2nd of '71..

1
2
3
4          Under that driver's license number he was
5   arrested for the offense of possession of a stolen
6   motor vehicle February 28 of 1989 in Cook County.
7   You pled guilty or you were found guilty of that
8   offense.
9          On September 30th of 1989, your driver's
10  license was revoked.  We mailed out a copy to you
11  telling you that your license would be revoked
12  because of your conviction for possession of a
13  stolen motor vehicle.  Before when we came in here
14  you even showed me your rap sheet --
15          THE WITNESS:  Right.
16          MS. PRICE-COHEN:  -- which showed me that
17  it had the arrest for possession of a stolen motor
18  vehicle.  So you were arrested February of '89.
19  You were charged with possession of a stolen
20  vehicle.  You were found guilty in 1989 of that.
21  Under the Illinois law, upon conviction of a stolen
22  motor vehicle, your license to operate a car was
23  revoked.  So your license was revoked, period, end,
24  unless you had a hearing with us which you never

EXHIBIT "B15"

B15    12

EXHIBIT "C"

# Original Application / File: issued August 5, 1987

RENEWAL TAG 0

21+ LICENSE

Gerald Williams brought a birth certificate and social security certification for this application.

This is the license # Gerald Williams was issued August 5, 1987

Jim Edgar
Secretary of State

DO NOT WRITE ON FORM    OFFICE USE ONLY

EARLY RENEWAL

DR NO. CHANGE

This is the August 5, 1987 timestamp.

EXHIBIT "C"

**EXHIBIT "D"**

JESSE WHITE
SECRETARY OF STATE
STATE OF ILLINOIS

# NOTICE OF HEARING

IN THE MATTER OF THE REVOCATION OF
THE DRIVER'S LICENSE AND DRIVING
PRIVILEGES OF THE PETITIONER.

FILE NUMBER:    C-0009107
Driver's License No.:   W452-2807-1128

GERALD WILLIAMS
2705 W 83RD ST
CHICAGO, IL 60652

**EXHIBIT "D"**

YOU ARE HEREBY NOTIFIED THAT pursuant to your request a hearing in the above matter will be held on the 09th day of January    2007       at the hour of  09:00 A.M.   in the Department of Administrative Hearings before a duly appointed Hearing Officer. You are to report to the following hearing location.

**SUITE 1200, 17 NORTH STATE ST., CHICAGO, ILLINOIS 60602**

THE PURPOSE OF SAID HEARING IS to afford you an opportunity to apply for driving privileges or contest the action of the Secretary of State (Secretary) in the suspension, revocation or denial of your driver's license and driving privileges. The action of the Secretary was taken pursuant to 625 ILCS 5/6205A3        because, OF YOUR CONVICTION OF ANY FELONY IN THE COMMISSION OF WHICH A MOTOR VEHICLE WAS USED. **#1989 CONVICTION#**

**FIRST!** This is what Williams was told the hearing would be about.

YOU ARE FURTHER ADVISED THAT you may bring an attorney to represent you. You will be given an opportunity to present in person or by counsel any documentation required to fulfill the minimum requirements as set forth in the enclosed instructions and/or such other evidence as may be pertinent to your case. You may also cross-examine any witness of the Secretary. Your failure to appear will result in an Order of Default. A continuance must be requested in writing and received at the address below. If submitted at least fifteen (15) days before the scheduled hearing your petition will be given priority in rescheduling if the continuance is granted. A continuance will not be granted on the grounds that you were not able to obtain the documents required to fulfill the minimum requirements. Additional information regarding the granting of continuances and withdrawals can be found at 92 Ill. Adm. Code 1001.100(n).

ATTENTION: FAILURE TO APPEAR PROMPTLY AT THE SCHEDULED TIME COULD RESULT IN A DEFAULT OR WITHDRAWAL REQUIRING ANOTHER REQUEST AND FILING FEE.

DATED: This 07th  day of December  , A.D., 2006

*Jesse White*

JESSE WHITE
Secretary of State
State of Illinois

DIRECT ALL INQUIRIES TO:
Department of Administrative Hearings
17 North State Street, Suite 1200
Chicago, IL 60602
(312) 793-3722

The Office of the Secretary of State supports the Americans with Disabilities Act of 1990. Any Petitioner who requires a special accommodation, sign language interpreter, or has questions regarding accessibility, may contact the Office as indicated above or through Illinois Relay Service by dialing 711.

(D)   /15\

92

NON-ALCOHOL

**EXHIBIT "F"**   34

job, first of all, having a felony on your record,
you know.  But I was able to work with Ameritech
for eight years driving and this was all under
1126.  I drove over the road for Warner,
Enterprise, over the road for a year.  Coca Cola, I
drove for them and I went to Star Truck Driver's
School.  I went to the Secretary of State.  I got
an M Class to drive a motorcycle.  I have advanced
my driving skills and knowledge and safety
practices by taking classes to be a safe driver.  I
got a speeding ticket now but this was running back
and forth to the Secretary of State in Springfield,
downtown trying to get this straightened out.  As
far as that, I have never had any problems with
traffic and the history on this abstract here shows
that since '89 I haven't been in trouble, no
problem with traffic.  So I was under the
impression that I could still reinstate it from the
time that it was first revoked, like now and to
contest the one that is being revoked for the
fraud.

HEARING OFFICER:  Ah.

THE WITNESS:  I thought could you --

HEARING OFFICER:  So you thought you

*Pursuant to Ill Rev. Stat. ch 95 ½, para. 6-208(b) (2) (1981) not a danger to public safety or welfare (with no moving violations no DUI's and no speeding tickets for 20 years).*

*This is exactly, what the attached NOTICE OF HEARING states:*

*Acknowledged by the hearing officer.*

40



**EXHIBIT "G"** 35

1 could reinstate this one and contest that one when

2 in fact we had combined the two?

Abuse of Discretion
The purpose of the
hearing according
to the NOTICE OF
HEARING is
abandoned by the
S.o.S. Hearing
Officer

3         THE WITNESS:  Yes.  Because this one

4 wasn't fraud because I didn't do anything

5 fraudulent.  All my information is here, that is

6 correct.

7         HEARING OFFICER:  So wait.  You were

8 going to contest which one?

9         THE WITNESS:  I was going to contest the

10 one saying that --

11         HEARING OFFICER:  What is the number?

12         THE WITNESS:  I was going to contest

13 false statement, 02 type of action.

14         MS. PRICE-COHEN:  That is the current

15 revocation.

16         THE WITNESS:  47 --

17         HEARING OFFICER:  Okay, now, sir.

18         THE WITNESS:  Oh, I'm sorry.

19         HEARING OFFICER:  Was it your plan to

20 contest 1126 or 1064?

21         THE WITNESS:  1126 -- well, 1064, if that

22 one was revoked because of my name, I mean --

23         MS. PRICE-COHEN:  You are going to court

24 on that one, though.  You showed me something that

EXHIBIT "G"

41



EXHIBIT "H"

Abuse of Authority.
The purpose of the
hearing according
to the NOTICE OF
HEARING is
acknowledged, but
abandoned by the
S.o.S. Hearing
Officer

1    HEARING OFFICER:    So you are saying we

2    combined the driving records in error?

3            THE WITNESS:    Yes.

4            HEARING OFFICER:    And, therefore, you are

5    saying that this abstract that shows the

6    combination of two driving records is inaccurate

7    and that is your objection.    Is that what you are

8    saying?

9            THE WITNESS:    Yes, ma'am.

10            HEARING OFFICER:    I will take into

11    account your objection and that is the nature of

12    your case today, is it not?

13            THE WITNESS:    Yes, it is.

14            HEARING OFFICER:    Okay.    I will take that

15    objection under advisement and make that part of my

16    final determination.

17            THE WITNESS:    All right.

18            HEARING OFFICER:    I am not overruling it.

19    I am not sustaining it.    I am saying it will be

20    part of my final determination.    Do you object to

21    any of the other documents?

22            THE WITNESS:    No.

23            HEARING OFFICER:    Would you like to take

24    a quick --

13

EXHIBIT "H"

(H)  20

EXHIBIT "10"

```
 1   did.

 2          Then in January of 2003 you went into the

 3   Secretary of State's Office and you gave them your

 4   name, but, you gave them the date of birth of May 2nd

 5   of 1971 and they issued a second driver's license

 6   to you.  And that is the driver's license that you

 7   have been driving on, under that number.  So you

 8   actually, under your name, you have two driver's

 9   licenses.  The first was issued under a March 2nd

10   of '71 date of birth and then the second one when

11   you went in there it was issued under March --

12   May 2nd of 1971.

13          And so when you went to get your second

14   driver's license, there is a question that they ask

15   you.  They say, is your license to operate a car

16   currently suspended or revoked or cancelled under

17   this name or any other name.  And you answered the

18   question "no" to that.  So they gave you a second

19   driver's license.  And then at some point when you

20   were working for the City of Chicago, according to

21   our fraudulent reports, at some point somebody

22   contacted the Secretary of State and they were

23   notified that you had two driver's license numbers

24   under the same name.  And that is -- then they
```

There is no BUT. The petitioner gave the S.o.S. his previous DL with h correct date of birth and it's the same license # issued since August 5, 1987.

The petitioner never applied for and never issued a license with a March 2, 1971 date of birth.

EXHIBIT "I"

Ⓘ  △21



006082700510

# OFFICE OF THE SECRETARY OF STATE
## STATE OF ILLINOIS    SPRINGFIELD
### *NOTICE/ORDER OF REVOCATION*

 *Exhibit "J"*

GERALD WILLIAMS
2705 W 83RD STREET
CHICAGO IL 60652

Date of Revocation 01-09-07
License Number    W452-2807-1126
PROJ. ELIG.       01-09-08

**WHAT FALSE STATEMENTS?** The only false statements are, in fact, negligent mistakes made by the S.o.S. *(supporting S.o.S. documentation and official transcript excerpts attached)*

Pursuant to the provisions of the Illinois Vehicle Code, Section 6 206 A9, YOU ARE HEREBY NOTIFIED that a Notice/Order revoking your Illinois driver's license or permit and your privilege to drive a motor vehicle or to obtain a driver's license within this state has been entered on the date shown above.
   THIS ACTION IS TAKEN AS A RESULT OF YOUR HAVING MADE A FALSE STATEMENT OR KNOWINGLY CONCEALED A MATERIAL FACT OR HAVING USED FALSE INFORMATION OR IDENTIFICATION IN AN APPLICATION FOR A LICENSE, IDENTIFICATION CARD OR PERMIT.

## Then, when Williams got there this is what the hearing was on.

The conviction(s) that caused this action is/are:
CAUSE OF YOUR REVOCATION.

THIS PORTION DOES NOT APPLY TO THE

| Date of Offense | Date of Conviction | Traffic Violation | | Ticket/ Case No. | Reporting Court/State | Telephone Number |
|---|---|---|---|---|---|---|



**EXHIBIT "J"**

This revocation is authorized by the Director of the Driver Services Department, Office of the Secretary of State.

Notice/Order of Revocation entered on date indicated above and filed in the Driver Services Department of the Office of the Secretary of State and the Notice/Order of Revocation mailed to the person named herein.





EXHIBIT "K"

O.S. was my Previous DL

This shows that in January 2003, 29

2003.

(K)

△24

On January 29, 2003.

12

The petitioner used his previous DL to secure the license applied for in January of 2003, contrary to Hillary prize-Cohen's accusing the petitioner of using false information to attain a second DL because his first was revoked.

**PERJURY EXHIBIT "L" 11 PERJURY**

625 ILCS 5/6-302
PERJURY.

brought that information to us, to our fraudulent

unit and we noticed the same picture of the same

person with two driver's license numbers and two

dates of birth.

So the reason your license was revoked

initially was because of your conviction for

possession of a stolen motor vehicle.

That is No. 1. So that is not in question. And

then so you actually have two revocations on your

driver's license. One is for the conviction back

in 1989, and I realize that is almost twenty years

ago, but the second is when you applied for this

driver's license, when -- well, at some point when

you applied for this driver's license, you are

always asked the following question. I will read

it out loud to you: Is your driver's license or ID

card or privilege to obtain an ID or license

suspended, revoked, cancelled or refused in any

state under this or any other name? If yes, a

letter of clearance is required. And you answered

"no". And do you presently hold a valid driver's

license or ID card in this or any other state? And

your answer was "yes". So the reason -- I just

want you to be clear that there's two revocations.

Where are the two queries with pictures of Williams on both, but two different DL numbers and two different dates of birth? Hillary price-Cohen stooped to the low level of lying to get this DL revoked and bring an UNDUE hardship on him, his wife and four small children.

Yet, she made reference to it 12 times after this and 13 times prior. VERY, VERY UNETHICAL, PERSONAL, and BIAS.

# EXHIBIT "L"

Williams answered NO, only because the S.o.S. never notified him that he had been issued a second DL, nor was he notified that his DL W452-2807-1126 had been revoked.

17




**EXHIBIT "M"** 18

**EXHIBIT "M"**

MS. PRICE-COHEN:  We still have --

THE WITNESS:  I brought my Social

Security card, too.  I don't know if you need that.

4      HEARING OFFICER:  No, it's the same

5  social for both of them.

6      MS. PRICE-COHEN:  No, social security

7  isn't in question.

8      HEARING OFFICER:  Your actual date of

9  birth is?

10     MS. PRICE-COHEN:  May 2nd, 1971.

11.    HEARING OFFICER:  5/2/71.

12     MS. PRICE-COHEN:  Correct.  And what

13  started this all is Fraudulent Review got a call.

14  And it says Carmen at O'Hare National Airport calls

15  inquiring about two driving records for one of her

16  employees, Gerald Williams.  Williams was revoked

17  in 1989 under DOB-3/2/71.  Using the DOB-5/2/71,

18  Williams secured a CDL on January 29th of 2003 by

19  answering "no" to No. 1.  Name and addresses are

20  the same.  The SSA verified 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 belongs to

21  Gerald Williams born 5/2/71.  So that is what

22  started this whole inquiry with us.  And that was

23  --

24     HEARING OFFICER:  Sir, do you have a CDL?

This inquiry was never investigated. The petitioner is BLACK and Hillary price-Cohen's actions shows that she personally believes he is GUILTY until proven innocent. All she had to do was take two seconds to review Williams' records to see that the S.o.S's own negligence is what hindered Williams from knowing of any revocation. Williams has answered no to #1 more than 15 times since 1987



**EXHIBIT "N"** 4

625 ILCS 5/6-117a.
Records to be kept
by S.o.S.
Hillary price-Cohen
admits to having
"All the driving
histories." So she
knew or should
have known the
S.o.S. negligently
created a fictitious
DL with false
information after
my original DL,
issued August 5,
1987.

1    seen her exhibit?

2         MS. PRICE-COHEN:   Right now I am bringing

3    in all of your abstracts.   All the driving

4    histories.

5         HEARING OFFICER:   All the driving

6    histories.

7         THE WITNESS:   Okay.

8         HEARING OFFICER:   Show him that abstract.

9    Now, look at it carefully, sir.

10        THE WITNESS:   Yes.

11        HEARING OFFICER:   What is the nature of

12   your objection to that abstract?

13        THE WITNESS:   Before I went to the

14   Secretary of State's Office --

15        HEARING OFFICER:   Are you saying that the

16   abstract is inaccurate?

17        THE WITNESS:   Yes, it is.   And the reason

18   it's inaccurate is because I went to the Secretary

19   of State after my job, which is the City of

20   Chicago, transferred me to the Department of

21   Aviation.   I have been working with the City of

22   Chicago for two years.   They check your driving

23   record every 30 days to make sure you are on good

24   standings.   Prior to that I worked for Ameritech

N   27

PURSUANT TO THE PROVISIONS OF THE ILLINOIS VEHICLE CODE, THE FOLLOWING INFORMATION IS
FURNISHED FROM THE DRIVER'S LICENSE FILE OF THE PERSON IDENTIFIED ABOVE.

| TYPE OF ACTION | DATE OF ARREST | EFFECTIVE DATE OF ACTION | DESCRIPTION OF ACTION | ACCIDENT OR TICKET NO. | TERMINATION DATE OF ACTION | STOP IN EFFECT |
|---|---|---|---|---|---|---|
| 54 | 01 25 04 | 04 54 | 5 500 AT | 245.679 | OVER 1ST | |
| | | | | SUSPENSION/REVOCATION | | |
| | | | DRIVING DURING A | | 08 24 03 | |
| 55 | | 04 20 03 | | | | |
| | | | CLEARANCE VEH EMIS SUSP | | 05 02 05 | |
| 56 | | 10 03 03 | LIC ISSUE | | 01 26 04 | |
| | | 01 26 04 | | | | |
| 56 | | | CLEARANCE VEH EMIS SUSP | | | |
| | | | * END OF RECORD * | | | |

Handwritten notes:
✱ I don't know. See below.
55 → Cleared by SOS
56 → Cleared by SOS

## This is Gerald Williams' driving record from 1987 to 2006.
### ✱ PRIOR TO THE BOGUS "2006" REVOCATION ✱

The S.o.S. made another mistake with line 55 DRIVING DURING A SUSPENSION / REVOCATION In violation of 625 ILCS 5/6-117 (b) Records to be kept by S.o.S. the S.o.S. shall maintain records of all licenses suspended or revoked and such records shall note reasons for such actions. This negligence is acknowledged in Finding of Facts 5b. The S.o.S. does not know the reason for this action. See Exhibit "53"

This is to certify, that to the best of my knowledge and belief, after a careful search of my records, that the information set out herein is a true and accurate copy of the captioned individual's driving record, identified by driver's license number, and I certify that all statutory notices required as a result of any driver control actions taken have been properly given.

*Jesse White*
Secretary of State

(SEE REVERSE FOR EXPLANATION OF CODES AND COLUMN HEADINGS)

EXHIBIT "O"



Case 1:08-cv-01208 Document 0 Filed 03/12/2008 Page 43 of 51

**EXHIBIT "P"**

## ILLINOIS STATE POLICE
### BUREAU OF IDENTIFICATION
**260 NORTH CHICAGO STREET**
**JOLIET, ILLINOIS 60432-4075**

**GERALD WILLIAMS**
2705 WEST 83RD STREET
CHICAGO, IL 60652

THE ILLINOIS STATE POLICE, BUREAU OF IDENTIFICATION RECENTLY RECEIVED A COURT ORDER OR PETITION FOR THE SUBJECT IDENTIFIED BELOW.

THE RESULT(S) OF THE COURT ORDER OR PETITION PROCESS ARE LISTED BELOW.

IF YOU HAVE ANY QUESTIONS CONCERNING THIS MATTER, PLEASE CONTACT THE EXPUNGEMENT UNIT AT (815) 740-5160.

✻ (Correct Date of Birth)

✻ This should be Gerald, not Gerard. This is another intra office error. "Typo"

---

**IDENTIFIERS**

---

TCN: WS10007008287009
SUBMISSION TYPE: EXPSL RESULT: DENIED
Name: WILLIAMS, GERARD
Sex Code: M          Race Code: B          DOB: 05/02/1971 ◀

**STATE USE ONLY**
WARNING: Release of this information to unauthorized individuals or agencies or misuse is prohibited by Federal Law Title 42 USC 3789g pertaining to criminal history information

# EXHIBIT "Q"

WILLIAMS, Gerald J.        M/B

~ Mar 49

2 May 51  ◄ (Correct Date of Birth)

#81180

Gerald J. WILLIAMS    #205778    ~28 F 6 89,Off. Wilm 8th Dist., Auto Theft
2510 S. 43rd               10 May 83, INFOR89CR-9712, PSMV, Burglary
3 May 51           18

Gerald J. WILLIAMS    9634139    ~18 Sep 94, Off. Murphy, Dist. 008, Battery
3705 S. 43rd St              29 Nov 94, 8408.(38-12-4a3), 3cts, RP/50., Jdge Markly, Disc
2 May 51           18           ~ 94103569, ASI P3



## ACCESS AND REVIEW

IDENTIFICATION SECTION
POLICE DEPARTMENT
1121 S. MICHIGAN AVE
CHICAGO, ILLINOIS 60605

DATE _____ SIGNATURE _____

**EXHIBIT "R"**



Office of the
Secretary of State
**DEPARTMENT OF
ADMINISTRATIVE HEARINGS**

Rm. 212, Howlett Building
Springfield, IL 62756
www.cyberdriveillinois.com

# FORMAL HEARING REQUEST

Date __Nov. 21, 2006__

I hereby request a Formal Hearing pursuant to Section 2-118 of the Illinois Vehicle Code. Enclosed is the **$50 filing fee.** (See back for fee information.) The purpose of the hearing is to allow me to:

☒ Contest the suspension or revocation action of the Secretary of State.

❏ Apply for an Employment Restricted Driving Permit (RDP).

❏ Apply for a Medical/Support Restricted Driving Permit (RDP).

❏ Apply for an Educational Restricted Driving Permit (RDP).

☒ Apply for full reinstatement of driving privileges.

❏ Alternatively, apply for full reinstatement or an RDP.

❏ Other: _____

**RECEIVED**

NOV 21 2006

Secretary of State
Administrative Hearings Dept.
CHICAGO

| Name GERARD L. WILLIAMS | | Driver's License Number W452-2807-1126 |
|---|---|---|
| Address 2705 W. 83RD ST | | City CHGO |
| State IL | County COOK | ZIP Code 60652 |
| Telephone (Home) (773) 556-6123 (Work) (773) 556-6123 | | |
| Date of Birth MAY 2, 1971 | | |

Formal Hearings are held in Chicago, Joliet, Springfield and Mount Vernon. Please mail the Formal Hearing Request Form to the location checked below where you would like a hearing:

☒ Chicago          Office of the Secretary of State
                   Administrative Hearings Department
                   17 N. State St., Ste. 1200, 60602
                   312-793-3722

❏ Joliet           Office of the Secretary of State
                   Administrative Hearings Department
                   54 N. Ottawa St., 4th Fl., 60432
                   815-740-7171

❏ Springfield      Office of the Secretary of State
                   Administrative Hearings Department
                   Rm. 212, Howlett Building, 62736
                   217-782-7065

❏ Mount Vernon     Office of the Secretary of State
                   Administrative Hearings Department
                   218 S. 12th St., 62864
                   618-242-8986

Please indicate preference: ☒ a.m. ☒ p.m. Number of miles from home to hearing location: __10 mi.__

Petitioner's signature: _____

**NOTE: If you will have an attorney representing you, please attach his/her business card.**

Printed by authority of the State of Illinois, June 2006 — 25M — DAH H-12 19

**EXHIBIT "R"**



Exhibit "S"

### JESSE WHITE
### SECRETARY OF STATE
### STATE OF ILLINOIS

IN THE MATTER OF THE REVOCATION OF THE
DRIVER'S LICENSE AND DRIVING PRIVILEGES          FILE NO. C-00091-07
OF GERALD WILLIAMS
DRIVER'S LICENSE NUMBER: W452-2807-1126

### ORDER

**WHEREAS**, the Findings of Fact, Conclusions of Law, and Recommendations of the Hearing Officer,

**A. PATRICIA SCOTT** in the above captioned case have been read and examined; and,

**WHEREAS**, the record has been reviewed; and,

**WHEREAS**, the Findings of Fact and Conclusions of Law are correct and are hereby adopted as the Findings of Fact and Conclusions of Law of the Secretary of State ("Secretary"); and,

**WHEREAS**, the rulings of the Hearing Officer on the admission of evidence and all motions were correct and are hereby concurred in by the Secretary; and,

**WHEREAS**, the Secretary adopts the recommendations of the Hearing Officer;

   **NOW THEREFORE, IT IS HEREBY ORDERED:**  That pursuant to the Findings of Fact, Conclusions of Law, and the Recommendations of the Hearing Officer, the Petition for the rescission of the Order of Revocation entered effective  January 9, 2007 pursuant to Section 6-206(a)9 of the Illinois Vehicle Code is hereby **DENIED.**

   The Petitioner's driving history contained under driver's license #W452-2807-1126 and driver's license #W452-2907-1064 have already been **COMBINED**.  The resulting abstract now bears the driver's license # W452-2807-1126, name Gerald Williams, social security #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 and birth date May 2, 1971.

**EXHIBIT "S"**



## FINDINGS AND RECOMMENDATIONS

## OF THE HEARING OFFICER

**JURISDICTION:**

This cause comes on for hearing at the request of Petitioner on **January 9, 2007**, pursuant to §5:2-118 of the Illinois Vehicle Code ("IVC") at 625 ILCS, *et seq.*, as amended and 92 Illinois Administrative Code, ("IAC") at Chapter II, §1001, *et seq.*, as amended, before **A. PATRICIA  SCOTT**, a duly appointed Hearing Officer. Petitioner **GERALD  WILLIAMS** ("Petitioner") appears *pro se*, having knowingly waived his right to legal counsel. The Secretary of State ("Secretary") was represented by **HILLARY  PRICE-COHEN**.

**RELIEF REQUESTED:**

The Petitioner seeks rescission of the Order of Revocation effective January 9, 2007 pursuant to Section 6-206(a)9 of the Illinois Vehicle Code, or in the alternative, the issuance of a Restricted Driving Permit. The burden of proof is upon the Petitioner for any relief in a hearing. The standard of proof is by a preponderance of the evidence, except as provided in 92 IAC §§1001.100(s), and 1001.420(c), 430(b) and 440(b).

**FINDINGS OF FACT:**

The Hearing Officer, being fully advised in the premises, finds as follows:

1.  The evidence, exhibits, and testimony have been offered and received from all parties, and a proper record of all proceedings has been made and preserved as required. The Hearing Officer has ruled on all motions and objections timely made and submitted;

2.  The Secretary of State of Illinois has jurisdiction over the parties herein and the subject matter hereof, due and proper notice having been previously given as is by statute in such case made and provided;

3.  An Order revoking the driver's license and driving privileges of the Petitioner was entered effective January 9, 2007, pursuant to **Section 6-206(a)9** of the Illinois Vehicle Code, due to making a false statement, knowingly concealing a material fact or providing false information or identification in an application for a driver's license, identification card or permit.

    An Order revoking the driver's license and driving privileges of the Petitioner was entered effective September 30, 1989, pursuant to **Section 6-205(a)3** of the Illinois Vehicle Code, due to committing any felony under the last of any State of the federal government in the commission of which a motor vehicle was used.

EXHIBIT "S3"

4.    Petitioner's request for hearing and the Secretary's notice of hearing were entered into evidence as Secretary's Exhibits #1 and #2, respectively. Petitioner's driving record (including, but not limited to, related documents) was read into the record and admitted into evidence as Secretary's Group Exhibit #3.   The Petitioner's yellow application for driving relief was entered into evidence as Secretary's Exhibit #4 in which the Petitioner reported no circumstances which otherwise would have precluded the Petitioner from proceeding with the hearing.   Finally,  Secretary's Exhibit #5 is the PDPS History/Status Response, obtained at the time of the scheduling of the hearing, which also did not indicate any information from any other State as of the date indicated.

5.    Details concerning the case in question are as follows:

a)    The Petitioner testified that he had originally received a driver's license prior to age 17 as a part of his high school driver's education program.  The Hearing Officer notes that this driver's license is number W452-2707-1064 and bears the birth date of March 2, 1971. This was a created driver's license. The Petitioner then testified that when he was 17 years of age he was arrested for and convicted of being in possession of a stolen vehicle. Pursuant to that conviction, he was not incarcerated but served 2 years of probation. He later (no date certain) applied for and received a driver's license in the name of Gerald Williams.

*[handwritten note, left margin: False, this is the fictitious second DL created in error by the S.o.S.]*

Although the Petitioner's driving privileges were revoked on September 30, 1989 for any felony under the laws of any state or the federal government in which the commission of a motor vehicle was used, the Petitioner further testified that he never received notice that his driving privileges had been revoked. The Petitioner then testified that he had no knowledge of having had a prior driver's license with the number W452-2707-1064 and with the birth date of March 2, 1971 and that he has never mis-represented his birth date or committed an intentional fraud. He submitted a birth certificate bearing the name Gerald James Williams, Junior and with a birth date of May 2, 1971. (Petitioner Ex. #2)

*[handwritten note, right margin: True, the petitioner did NOT have this DL prior to August 5, 1987.]*

b)    The Hearing Officer notes that the Petitioner's argument is persuasive that he had committed no intentional fraud in the matter of two differing birth dates, particularly since it is the Petitioner's first, not second, driver's license that bears the erroneous date. Further, the Petitioner's birth date of March 2, 1971, which became a part of a created driver's license, was taken from the notice of felony conviction that bore the handwritten date of March 2, 1971, not from any document supplied by the Petitioner. The Hearing Officer is also persuaded that the Petitioner may have had no knowledge that his driving privileges had been revoked even though he had been arrested for (on January 25, 1994) and convicted of (on October 4, 1994) driving while suspended or revoked. (Secretary Ex. #3) The Hearing Officer gives this reduced weight because

*[handwritten note, left margin: False, the second DL bears the erroneous date]*

*[handwritten note, right margin: See Exhibit "O"]*

c)    The Petitioner is currently employed by the City of Chicago as a pool motor truck driver. (Petitioner Ex. #1) He holds a CDL. Although the Petitioner has considered in the course of the hearing requesting an employment based Restricted Driving Permit, and while the Hearing Officer finds that the Petitioner does have an undue hardship with respect to employment, there are no provisions under the Illi-

3

*[handwritten note, bottom right: 5]*

EXHIBIT "54"

nois Vehicle Code or the 92 Illinois Administrative Code for the Secretary to issue a CDL Restricted Driving Permit

6. The courts have held that the Petitioner's lack of knowledge that their driver's license is suspended when they answer the question of whether their driver's license is currently suspended or their lack of knowledge regarding any other incorrect information that they provide on their driver's license application does not preclude the Secretary of State from suspending their driver's license and driving privileges due to making a false statement or providing false information on a driver's license application pursuant to Section 6-206(a)9 of the Illinois Vehicle Code. Said statute allows the Secretary of State to suspend the driver's license and driving privileges of the Petitioner solely upon showing that the person made a false statement or provided false information on a driver's license application and therefore knowledge that the statement was false is immaterial. See **Bruce v. White**, 279 Ill. Dec. 907, 801 N.E.2d 581 (Ill. App. 4th Dist. 2003). Since the Petitioner provided no other rationale other than their failure of knowledge regarding the incorrectness of the information which they provided on the driver's license application dated, they have failed to meet their burden of proof that the suspension entered pursuant to Section 6-206(a)9 of the Illinois Vehicle Code should be rescinded.

*(handwritten left margin, circled: The S.o.S. provided the incorrect information hindering the petitioner's knowledge of any revocation.)*

*(handwritten right margin: THEY didn't provide the incorrect information the SOS did!)*

7. The Petitioner has not submitted sufficient evidence to warrant the rescission of the order of revocation for the following reason: he has offered no rationale other than lack of having received notice of prior revocation.

8. Petitioner is employed by the City of Chicago, Department of Transportation. (Petitioner's Testimony and see Petitioner's Exhibit #1.)

   a) There is no alternative means of transportation available to Petitioner's driving in the course of his employment related duties for the City of Chicago because he is a motor pool truck driver by profession. Therefore, the Hearing Officer finds that there is an undue hardship as it pertains to employment. However, there are no provisions under the Illinois Vehicle Code or the 92 Illinois Administrative Code for the issuance of a CDL restricted driving permit. Therefore, the Petitioner's undue hardship is moot.

9. The Hearing Officer observed the demeanor of the Petitioner to be polite.

10. The testimony of the Petitioner was sincere.

*(handwritten right margin: The petitioner has been polite and sincere.)*

11. The Petitioner failed to demonstrate that the suspension entered 625 ILCS 5/6-206(a)9 should be rescinded. Petitioner has carried his burden of proving an undue hardship for employment, however, there are no provisions under the Illinois Vehicle Code or the 92 Illinois Administrative Code for the issuance of an RDP for a commercial driver's license.

*(handwritten left margin: e petitioner now ffers an undue ardship because of he S.o.S's negligence.)*

## STATUTES AND RULES APPLICABLE:

The authority sections of the Illinois Vehicle Code (625 ILCS, Act 5) relied upon herein are: 2-101, 2-103, 2-104, 6-206(a)9, 6-206(c)3 and 6-208(b)   The authority sections of the Rules and Regulations

4



EXHIBIT "S5"

promulgated by the Secretary of State are contained in Chapter II, 92 Illinois Administrative Code, Section 1001.10 *et seq.*

**CONCLUSIONS OF LAW**:

1. The Petitioner failed to submit sufficient evidence to warrant rescission of the Order of revocation. See 92 Ill. Adm. Code Secs. 1001.100(s) and 1001.460, as amended

**RECOMMENDATION**:

The Petition for the rescission of the Order of Suspension entered effective January 9, 2006 pursuant to Section 6-206(a)9 of the Illinois Vehicle Code should be **DENIED**

_____
**A. PATRICIA SCOTT**
**HEARING OFFICER**

ANOTHER "Typo" (error) by the S.O.S. should be 2007

Page S has
W452-2907-1064
Page S3 has
W452-2707-1064
MORE S.O.S "TYPOS"

5

**EXHIBIT "T"**

EXHIBIT "T"

COURT PURPOSES

W452-2807-1126-0 05501

11 17 06                DDL: Y

PURSUANT TO THE PROVISIONS OF THE ILLINOIS VEHICLE CODE, THE FOLLOWING INFORMATION IS FURNISHED FROM THE DRIVER'S LICENSE FILE OF THE PERSON IDENTIFIED ABOVE.

W452-2807-1126-0

GERALD   WILLIAMS
2705 W 83RD ST
CHICAGO 60652

| | | |
|---|---|---|
| 06 02 05 | 03 16 06 | 05 02 71 |

| SEX | HGT | WGT | HAIR | EYES | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| M 5 08 190 BRN BRN | Y Y R A M X | MONE | 05 02 09 |

| | DATE OF ARREST | DISPOSITION DATE OF ACTION | DESCRIPTION OF ACTION | ARRESTING REPORTING | CONVICTION DATE OF ACTION | STOP OF EFFECT |
|---|---|---|---|---|---|---|
| 55 | 01 25 94 | 10 04 94 | 6 303 A1 | 246767B | COOK 1ST | |

DRIVING DURING A                       SUSPENSION/REVOCATION

|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
| 65 | | 06 02 05 | LIC ISSUE | | 05 02 09 | |
| 02 | | 01 09 07 | 6 206 A5 | | | PKN |

FALSE STATEMENT/USED FALSE INFO OR ID

| 47 | | 01 09 07 | FINANCIAL RESPONSIBILITY REQUIRED | | | |

REVOCATION

| 08 | | 11 19 06 | 6 206 A5 | 1981 | | KMN |

INELIGIBLE UNDER THE           PROVISIONS OF SEC 6-103

| 94 | 02 28 89 | 08 22 89 | 4 103 06 | 9212 | COOK 1ST | |

MOTOR VEHICLE ANTI-THEFT LAW/FELONY

| 01 | | 09 30 89 | 6 205 A- | | | YES |

ANY FELONY IN COMMISSION OF WHICH MOTOR VEH USED

| 47 | | 09 10 89 | FINANCIAL RESPONSIBILITY REQUIRED | | | |

REVOCATION

* END OF RECORD *

*[handwritten annotation:]* Pre Bogus 2006 Revocation.

*[handwritten annotation:]* Post Bogus 2006 Revocation

This is to certify, that to the best of my knowledge and belief, after a careful search of my records, that the information set out herein is a true and accurate copy of the captioned individual's driving record, denoted by driver's license number, and I certify that all statutory notices required as a result of any driver control actions taken have been properly given.

Jesse White

Secretary of State

(SEE REVERSE FOR EXPLANATION OF CODES AND COLUMN HEADINGS)